IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS HAGAN | : | CIVIL ACTION |
| v. | : | |
| SEARS APPLIANCE AND HARDWARE STORE, et al. | : | NO. 16-6461 |

MEMORANDUM

Bartle, J.                                                               March 2, 2018

Plaintiff Thomas Hagan has brought claims of strict products liability, negligence, and breach of warranty against Sears Appliance and Hardware Store, Sears, Sears Brand LLC, Sears Brands Management Corporation, and Craftsman. He alleges that a defectively designed Craftsman weedwacker that he purchased from a Sears store caused severe injuries to his cervical spine while he was using it.

Defendants contend that Plaintiff cannot establish the element of causation in each of his claims since, according to them, the testimony of Plaintiff's experts, Dr. William Murphy and Mr. Dennis Mitchell, will be insufficient and thus inadmissible under <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence. Defendants move to exclude the testimony of Dr. Murphy and Mr. Mitchell under <u>Daubert</u> and Rule 702 and as a result seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

The court has a "gatekeeper role" in connection with expert testimony. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997); see also Daubert, 509 U.S. at 597. Our Court of Appeals has repeatedly noted that Rule 702 of the Federal Rules of Evidence has three major requirements: qualification, reliability, and fit. See e.g., Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, qualification refers to "the requirement that the witness possess specialized expertise." Schneider ex rel. Estate of Schenider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). This requirement is interpreted liberally. "[A] broad range of knowledge, skills, and training qualify an expert." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 749 (3d Cir. 1994).

To determine reliability, we focus on whether the expert's testimony is "based on the methods and procedures of sciences rather than on subjective belief or unsupported speculation[.]" Schneider, 320 F.3d at 404 (internal quotation marks omitted). "[T]he test of reliability is flexible" and the court has a broad latitude in determining reliability. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 153 (1999). Daubert does not require a party to prove that his or her expert's opinion is "correct." In re Paoli, 35 F.3d at 744. Instead:

> As long as an expert's scientific testimony rests upon "good grounds, based upon what is known," it should be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004) (quoting Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)) (citations omitted). Daubert demands only that the evidence shows that "the expert's conclusion has been arrived at in a scientifically sound and methodically reliable fashion." Id.

Reliability under Daubert does not require that an expert opinion regarding causation be based on statistical evidence. Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 40 (2011). Many courts have recognized that medical professionals

often base their opinions on data other than statistical evidence from controlled clinical trials or epidemiological studies. Id. at 41. Our Court of Appeals has stated, "we do not believe that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness." Heller v. Shaw Indus., Inc., 167 F.3d 146, 155 (3d Cir. 1999).

Finally, Rule 702 requires that the expert testimony fit the issues of the case. "In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404.

### III

Defendants maintain that the expert testimony of Plaintiff's expert Dr. Murphy on the medical causation of Plaintiff's injuries should be excluded as unreliable since he has not seen the weedwacker and has not performed any testing or analysis on the weedwacker. Plaintiff counters that Dr. Murphy's qualifications as a doctor of osteopathy, experience in that field, evaluation of and history taken from Plaintiff, Plaintiff's past medical records relating to the cervical spine and disc herniation, his consideration of the expert report of Mr. Mitchell, as well as Dr. Murphy's experience diagnosing and treating patients in the field of rehabilitation and osteopathic medicine qualify him to provide expert testimony on medical causation under Daubert.

Dr. Murphy will opine that Plaintiff's use of the weedwacker on June 26, 2015 was the medical cause of his injuries. Viewing together Dr. Murphy's qualifications, his experience in the field of osteopathy, the basis of his causation conclusion, and the issues of this case, we conclude that his expert testimony regarding the medical causation of Plaintiff's cervical spine injuries meets the requirements of Daubert and Rule 702. Matrixx, 563 U.S. at 40-41; Heller, 167 F.3d at 155. Accordingly, his testimony on this issue will be admitted. Defendants, of course, will be able to test his testimony through cross-examination.

We next address the expert opinion of Plaintiff's ergonomics expert, Dennis Mitchell. Ergonomics is "the applied science of equipment design in order to reduce operator fatigue and discomfort." Webster's II New College Dictionary 382 (1995). Defendants contest the reliability and fit of Mr. Mitchell's expert testimony. He will opine that the design defects of the weedwacker "were the factual cause of the harm" to Plaintiff. His opinion sets forth three distinct defects of the weedwacker: (1) the defect in the shoulder strap causing shear force to be applied to the shoulder and neck; (2) the defect in the shoulder strap causing an increase in the hand-arm vibration transmitted to the shoulder and neck by the shoulder strap; and (3) the defect in the shoulder strap and manual pull cord causing force to shoulder and neck when the pull cord is used. We assess the reliability of his testimony

under the Daubert holding that "an inquiry into the reliability of scientific evidence under Rule 702 requires a determination of its scientific validity." In re Paoli, 35 F.3d at 742 (citing Daubert, 509 U.S. at 601 n. 9).

Mr. Mitchell is the principal of ErgExperts, a consulting firm that specializes in the area of ergonomics, in particular the analysis of work environments, product design, and the ergonomic human response to the use of products. More than half of Mr. Mitchell's professional work consists of providing expert consulting in legal matters related to ergonomics. In addition, he conducts product design and testing, analysis of work environments and products, conducts and reviews training programs, and other ergonomic-related functions.

The expert report of Mr. Mitchell details the documents and information he considered in creating his report. It also describes the various testing that he performed on the weedwacker and the results of the testing. Mr. Mitchell relies on the tests that he performed using the weedwacker and past studies previously conducted by him and others relating to shear force and hand-arm vibration. In addition, he takes into account scientific studies and conclusions, mathematical calculations, manufacturing standards, and literature in order to determine the force and hand-arm vibration necessary to cause injury to the cervical spine. As previously noted, Mr. Mitchell will opine that the defects of

the weedwacker as described in his report "were the factual cause of the harm" to Plaintiff.

The first defect described by Mr. Mitchell in his expert opinion concerns the shear force that was transmitted onto Plaintiff's shoulder and neck by the weedwacker's shoulder strap and the lack of proper warnings related to this force. Mr. Mitchell concludes that, based off of all of the information he considered, the shear force applied to Plaintiff's cervical spine was greater than the minimum amount necessary to cause injury to the cervical spine.[1] Mr. Mitchell has stated in his deposition that this force applied to Plaintiff by the shoulder strap caused Plaintiff's injuries.

Mr. Mitchell possesses specialized expertise in the area of ergonomics. His conclusion that the shear force generated by the application of the shoulder strap on Plaintiff's neck and shoulder caused Plaintiff's injuries is supported by the testing he performed on subjects using the weedwacker and the corresponding results, as detailed in his report. Further, Mr. Mitchell

---

1. Mr. Mitchell calculated the shear force that was applied to Plaintiff's shoulder and neck by the shoulder strap. He also calculated the amount of force necessary to cause injury to the cervical spine. Mr. Mitchell did not calculate the shear force applied to Plaintiff's cervical spine in this instance. However, he stated that based on these calculations and the literature, studies, equations, and tests that he also considered, the force applied to Plaintiff's spine here was greater than the minimum amount necessary to cause injury to the cervical spine.

testified that he relied on scientific calculations, studies, and testing regarding shear and compression forces on the neck, shoulder, and cervical spine. His deposition and expert report demonstrate that his expert testimony and conclusions on the force generated by the use of the strap on the shoulder is grounded in scientific testing, calculations, and studies. Accordingly, the testimony on the defect of the shoulder strap in this respect and related need for warnings is admissible under Daubert and Rule 702. It is up to the adversary process of trial to attempt to undermine Mr. Mitchell's testimony. Mitchell, 365 F.3d at 244.

We turn to the two remaining areas of Mr. Mitchell's expert opinion. He has opined the shoulder strap amplified the hand-arm vibration of the weedwacker and transmitted this vibration to the shoulder and neck. Such a boost in shear force, according to Mr. Mitchell, could cause increased musculoskeletal response in the cervical spine area. Plaintiff argues that this opinion and Mr. Mitchell's opinion on the need for warnings of the risks of hand-arm vibration are admissible under Daubert and Rule 702.

This expert testimony will not be admitted under Daubert and Rule 702. In addition to this hand-arm vibration testimony, Mr. Mitchell concedes that Plaintiff's injuries were not caused by the hand-arm vibration of the weedwacker. Thus this area of testimony and the need for warnings on this subject will not aid the trier of fact. See Schneider, 320 F.3d at 404.

The final area of Mr. Mitchell's testimony that Defendants seek to have excluded concerns the force generated by the pull cord of the weedwacker and transmitted onto Plaintiff's shoulder and neck through the shoulder strap could cause injury to the cervical spine. This testimony will not "fit" for the purposes of this case under <u>Daubert</u> and Rule 702. Plaintiff has stated that he did not manually start the weedwacker using the pull cord. Instead, he started the weedwacker using the automatic starter that he purchased. Consequently, any testimony by Mr. Mitchell on the pull cord will not be relevant for the purposes of this case and will not assist the trier of fact. <u>Schneider</u>, 320 F.3d at 404. Thus, it will be excluded under <u>Daubert</u> and Rule 702.

Accordingly, the motion of Defendants to exclude the expert testimony of Dr. Murphy will be denied. The motion of Defendants to exclude the expert testimony of Mr. Mitchell will be granted in part and denied in part. Finally, the motion of Defendants for summary judgment will be denied.